King, J.
The plaintiff, Rafael Garcia, is an inmate lawfully committed to the Massachusetts Department of Correction. As a result of a disciplinary hearing held on March 12, 1992, the plaintiff was found guilty of conspiring to introduce heroin into the North Central Correctional Institution at Gardner (NCCI). As a sanction, he was sentenced to spend three years at the Departmental Disciplinary Unit (DDU), situated at MCI Cedar Junction, where he remains incarcerated. Presently before the Court is the plaintiffs motion for partial summary judgment and the plaintiffs second motion for a preliminary injunction. Both of these motions rely on the plaintiffs claim that his confinement to the DDU violates his rights under the ex post facto clause of Article 1, §9 of the United States Constitution.
After considering the arguments and briefs of counsel, the Court concludes that the plaintiffs confinement to the DDU does not violate his rights under the ex post facto clause of the United States Constitution.
MOTION FOR PARTIAL SUMMARY JUDGMENT
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving parly is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concern' an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
A. Undisputed Facts
The material facts relating to the plaintiffs ex post facto claim are not disputed and may be summarized as follows. On February 10, 1992, the plaintiff was charged with disciplinary report #92-174, alleging that on about December 1991, he conspired to bring heroin into NCCI. After a hearing where the plaintiff was represented by counsel, the plaintiff was found guilty and he was sanctioned with a three-year sentence to the DDU. He then appealed that guilty finding and his appeal was denied by the Commissioner of the Department of Corrections.
The regulations creating the DDU were promulgated after the plaintiff allegedly conspired to bring heroin into NCCI. 103 CMR 430.00 (effective January 22, 1992). The DDU is a restricted area at MCI Cedar Junction utilized to house inmates found guilty of serious disciplinary offenses. Prior to January 22, 1992, the defendant had no authority to operate the DDU. Under the DDU regulations, a hearing officer may sentence an inmate found guilty of a disciplinary offense for up to ten years to the DDU. 103 CMR 430.25. Inmates sentenced to the DDU are confined to their cells except for one hour in the recreation yard, five days per week. The inmates are allowed to speak to each other while in the recreation yard but are not allowed physical contact. Social telephone calls and visits for inmates confined to the DDU are limited to four per month and must be earned by good behavior.
B. Plaintiffs DDU Confinement Does not Violate the Ex Post Facto Clause
Article 1, Sec. 9, cl. 3 of the United States Constitution forbids Congress from passing any “ex post facto law.” Article 1, Sec. 10, cl. 1 applies the same proscription to the states. Under the ex post facto clause, “[legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.” Collins v. Youngblood, 110 S.Ct. 2715, 2719 (1990). The United States Supreme Court has held that the ex post facto clause applies to:
*323 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.
2d. Every law that aggravates a crime, or makes it greater than it was when committed.
3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.
4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.
Calder v. Bull 3 U.S. (3 Dall.) 386, 390 (1798) (emphasis in original).
The plaintiff argues that the regulations promulgating the DDU increased the punishment for the offense he was charged with and, therefore, contravene the ex post facto clause of the United States Constitution. In order for the ex post facto clause to be applicable to this case, the regulations must be penal or criminal in nature. “The Constitution of the United States does not prohibit. . . retrospective laws generally; but only ex post facto laws . . . [Such] laws relate to penal and criminal proceedings, which impose punishments or forfeitures, . . .” Watson v. Mercer, 33 U.S. 88, 109-10 (1834). “[PJrison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.” Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Cases interpreting the ex post facto clause have held that the clause does not apply to prison regulations even though changes in regulations, as in this case, work to the disadvantage of the inmate. For example, in Francis v. Fox, 838 F.2d 1147 (11th Cir. 1988), an inmate’s challenge to the retroactive application of stricter work release regulations was rejected by the Court. In dismissing the inmate’s claim, the court held that an ex post facto law is “a criminal or penal measure, retrospective, and disadvantageous to the offender because it may impose greater punishment.” Id. at 1150 (citations omitted). Work release regulations, however, were not subject to the clause because their change did not “affect the maximum or minimum prison sentence a court may impose, the point at which the prisoner becomes eligible for parole, or his mandatory release date.” Id. Similarly, in this case, the plaintiffs confinement to the DDU merely requires the plaintiff to serve a portion of his sentence in a more restrictive setting. It does not affect the plaintiffs maximum or minimum prison sentence, his “good time” credits, his parole eligibility date, or his mandatory release date.
The plaintiffs reliance on the case of Commonwealth v. Kelley, 411 Mass. 212 (1991), is misplaced. In Kelley, a statutory amendment increasing the age beyond which a juvenile can be held in custody was held violative of the ex post facto clause of the United States Constitution. That case, however, is distinguishable from this case because in Kelley the statutory amendment increased the period of incarceration for juveniles beyond what it was at the time the offense was committed. By contrast, here the length of the plaintiffs sentence has not been altered by his transfer to DDU. The only change to the plaintiffs circumstances is the location and conditions of his incarceration, a change which was made as a result of a serious disciplinary violation which threatened the safety and good order of a penal institution. For the foregoing reasons, plaintiffs motion for partial summary judgment must be denied.
MOTION FOR A PRELIMINARY INJUNCTION
Plaintiffs motion for a preliminary injunction is based on the claim that his confinement to the DDU is in violation of the ex post facto clause of the United States Constitution. For the reasons set forth above, the plaintiff has not established a likelihood of success after a hearing on the merits and, therefore, his second request for preliminary injunction must be denied.
REMAINING CLAIMS
It appear that the plaintiffs remaining claims can probably be resolved by way of summary judgment since the underlying facts do not appear to be in dispute. For this reason, the Court will set a summary judgment briefing schedule for the remaining claims.
Accordingly, it is hereby ORDERED that:
1. Plaintiffs motion for partial summary judgment is DENIED.
2. The plaintiffs second motion for preliminary injunction is DENIED.
3. Within thirty days of the date of this order, counsel for the plaintiff shall serve a motion for summary judgment on counsel for the defendant with regard to the plaintiffs remaining claims in conformity with the requirements of Superior Court Rule 9A.